If it pleases the Court, my name is Arthur Romley. I represent the Appellant Hall Family Properties. I would like to address first the concept that there are two contracts in this case. And it appears in trying to analyze what Judge Strand decided below that he thought there was one contract. There are two contracts. The first was the partnership agreement dated March 31 of 1986. And there is a tax letter. There's some argument about when that agreement was signed. But there is a tax letter required by G.D.C. dated April 14, 1986, and that's in the record at pages 287 to 289. So we know that there is a partnership agreement. We know from the proof of claim that was filed by Hall Family Properties that it was not until November, some six or seven, eight months later, that they found out about the construction proposal. The construction contract, the second contract, is dated November 25, 1986. That's the date it's executed. And I think it's important to bring this to the attention of the Court because Judge Strand said that, and this is from the background statement, second paragraph on page one of his opinion. In October 1986, an amended partnership agreement was executed among the same parties which contemplated the design, development, and construction by G.D.C. of a 113,000-square-foot office building, et cetera, et cetera. Now, the problem with Judge Strand's view of one contract, not only is that a mistake, but that one contract that he's talking about does not involve my client because it did not sign the construction contract. Hall Family Properties signed the partnership agreement, not the construction contract. partnership agreement, isn't it, from which you derive your fiduciary duty claim. Isn't that right? That's true. Or am I missing something? No. It's definitely, under well-settled Arizona law, the partnership agreement and the partnership itself, separate apart from the agreement, that creates those fiduciary duties. And that goes back as early as the 1951 decision of the Arizona Supreme Court in DeSantis v. Dixon. And, again, looking at this from the perspective of the people who entered into the partnership agreement in 1986, there had been a decision of the Arizona Court of Appeals just a year earlier in German v. O'Leary, which held a limited partner had the right to recover punitive damages against the general partner for breach of fiduciary duty in failing to disclose material information about the partnership. So that was the status of the Arizona law. Not only that, Judge Paez, the partnership agreement itself, in paragraph 13.4, speaks of the right of the remedy of the breach of fiduciary duty. So it's just inconceivable to suggest, as GDC does, that somehow the economic loss rule has abrogated the right to recover breach of fiduciary duty damages. How do you understand the status of the economic loss rule within the Arizona courts? Because we're bound to apply the law of the Arizona courts. The economic loss rule, and I appreciate your bringing that up, is not new to Arizona. It was first discussed as early as 1973 in Beecher v. Wilson, which is in 515 Pacific 2nd at 41. The truth of the matter is our seminal case is the Salt River Project v. Westinghouse Electric, which set forth in a products liability situation what Judge Bolton has decided, and correctly so, I submit, in her Evans v. Singer opinion last August, I believe it was, in which opposing counsel's firm participated, was a narrow construction of that economic loss rule. And you have to look at the relationship among the parties, which is thrown out by GDC. They simply say if the contract, if the breach of contract and the breach of fiduciary duties arise out of the same facts, then you're foreclosed. But that's not what the Supreme Court of Arizona said, and that's not what this circuit said when it criticized the decision relied upon by Judge Strand, which obviously was Apollo v. Giles-Avnet, the 1995 decision, which itself was an appeal of a summary judgment granted by Judge Strand in a products case. And in this circuit in ‑‑ I'm sorry, grabbed the wrong case. Giles v. General Motors Acceptance Corporation decided in January of 2007, this Court quoted from Apollo to this effect, generally, and this is what Apollo said, generally under the economic loss rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort. This is at page 874, 875 of the reported decision. The Court ‑‑ What's the status of the bankruptcy now? Pardon? What's the status of the bankruptcy? The bankruptcy, I frankly don't know. They have never filed a plan for reorganization. We're 10 years later. They're still fighting predators. The Federal Government has a claim for some $8 million in taxes and interest. There are a number of other predators. There are a number of material men and laborers paid on construction projects. So the bankruptcy ‑‑ What doesn't appear to me is at the end of the day, probably a Chapter 7 no asset or limited asset. Exactly, Your Honor. So why ‑‑ Why are we here? Why are you here? Exactly. I'm glad you asked that question. The reason we're here, Your Honor, is because we were snookered. The ‑‑ not we, but the bankruptcy court. The bankruptcy court was presented with the participation of the three Gosnell brothers. They came into the bankruptcy court. They appeared. They objected to our proof of claim. Then they said, no, we're not here. But they got the ball started. And then they said, we don't have anything to do. We don't submit. So the breach of fiduciary duty claim is going to carry us back into the state court action against the Gosnell brothers. And that's what this is all about. This has very little to do with Gosnell Development Corporation, excuse me for saying that, because you're probably exactly right. You have a fiduciary claim to go after the brothers. We go after the brothers. And the jury already decided that the brothers breached fiduciary duties. Do you feel that there are enough assets there that makes this work? The brothers are wealthy. They did a good job of hiding everything and protecting it. So that's what this is about. The point is getting uncomfortable when you say that, but we understand that's outside the record. But I just wanted to ---- And I appreciate you asking the question, because I wasn't sure it would be appropriate for me to say that. Except that you asked the question. Continuing, just very ---- My question is that there is more at stake here than just the pure distribution and bankruptcy, which is unlikely to get your clients anything. Right. If the Gosnell brothers were in the bankruptcy court, which they were at one time, and we could try this case in bankruptcy court and we'd have one trial instead of ten years later, we're still hanging. Okay. It would be a different situation. If I could just finish the statement from GMAC, the Giles case. I quoted to you what Apollo said, which Judge Strand relied on. This court then said, such broad statements are not accurate. Tort law has traditionally protected individuals from a host of wrongs that cause only monetary damage. As the Utah Supreme Court has noted, torts such as fraud and conversion exist to remedy purely economic losses. And I'm running out of time very quickly, which is part of the problem, and I do want to save a little bit for rebuttal. I do want to point out that the partnership agreement, again, the purpose, this is page 583 of the record, so I'm not going to repeat each time record, that to own the land, develop the land, or hold the land. Paragraph 4.1 on pages 588, 589, GDC had the authority to act without the approval of HFB, its limited partner. Paragraph 4.1.2, this is all contrary to what Judge Strand's thinking is. Page 589, GDC had the discretion to develop. They had the discretion to develop. Paragraph 4.2.2, page 593, GDC could sell the land if they got an offer from a third party. So, I mean, this was not a partnership that was designed to build a 113,000-square-foot building. There were no quality, fitness, or specifications related to a building. There was no type, size, architecture. There's none of this product liability, construction defect type situation, which is what the Arizona cases on economic loss rule are about. And it's just very difficult to understand what this has to do, the economic loss rule, with a breach of fiduciary duty. I pointed out to you that the Arizona partnership law back in 1986 was DeSantis v. Dixon, German v. O'Leary. We have a later opinion, Rue v. Dawson held the financial partner liable in punitive and RICO damages for breach of fiduciary duty. We have this case. This case was decided before the Arizona Court of Appeals in 1995, and there was nothing said about the economic loss rule. Since 1999, I found two more Arizona cases, partnership cases, dealing with fiduciary duty. Excuse me. They really are not directly in point, but I want to point out that they did not deal with the economic loss rule. They left it out. They were Steer v. Eagleston, excuse me, Curley v. Ethan Eppington. Both cited in the opening brief at page 32. I want to also point out to the Court, and I know you're aware of this, this case is here on summary judgment. There should not be any fact disputes. I don't know that there are any, except for the argument that came up in the reply brief by GDC regarding the meaning of the parties back in 1986. When they use certain language in paragraph 4.4, and they come up with this argument about Arizona revised statute section 29-307, that's a factual dispute. They say even if you don't agree with us on the fiduciary duty, give it to us on 29-307. That is impermissible because that would be a factual dispute that would preclude summary judgment. There are a number of cases, and I'm not going to cite all of them, in Arizona that did not apply the economic loss rule. One of our pleadings — Just your time is running out. I know it is. I'm sorry. Let me just ask you one last question. What's — I see you're saying, telling us that there are cases that don't mention the economic loss rule. Are there any cases that squarely hold that the economic loss rule does not apply to fiduciary duty claims? None in Arizona. All right. So you're relying on sort of a dog-that-didn't-bark theory. I have to. It doesn't have anything to do with the case. Let me ask you this. Do you think the issue is sufficiently important that it ought to be certified to the Arizona Supreme Court? I tried to do that with Judge Baum back in the bankruptcy court, and he refused to do it. Well, that doesn't mean that making it is. I think it's an important issue. I mean, what — Or can we safely say, based upon our reading of the court of appeal decisions in Arizona, that we think this is what the Arizona Supreme Court would do and just decide the case? Why do you even get to that position, Judge Pelleas? Because the point is — Well, because we're applying Arizona law, and you're telling me there's not a case specifically on point. But under Technor v. Choice Hotel, which Judge Thomas wrote a good number of years ago, I don't think you even get to that issue because you've got to follow existing Arizona law. Right. Well, if we conclude that it's pretty clear from existing law, then that's one thing. If we conclude it's unclear, then we could certify it. You could certify it. I asked for that. Yes. But in making a certification decision, I think there are two factors that influence me. One is, is the issue important enough to take up the time of the Arizona Supreme Court? Not that it's not important to the parties, but does it come up with such frequency that it makes it important enough that the Arizona Supreme Court is going to say, yes, this is something that we're going to voluntarily take on in addition to our regular workload? The second one, of course, is to make sure we're not trampling on state law by our decisions or our predictions about what state law might be or what we think it is. And third is the parties. I mean, it's building in more delay if we certify it. So those are sort of the three factors I usually consider, among others, when deciding whether to certify or not. Obviously, Your Honor, I can't answer for what the Supreme Court of Arizona thinks is or is not important. This issue is coming up repeatedly in all sorts of cases. This economic loss rule started up with a depublished opinion in Kena v. Burger King in 1999, and it came up from two law firms, opposing counsel's law firm in Lewis and Broca. They just inundated our courts with this economic loss rule in all kinds of cases. And it really hasn't been decided. I think Judge Bolt in the Evans v. Singer gave you the most thorough analysis. I can't improve on her decision of where Arizona law is. And she has said clearly, and I think the cases show that, that there's only two times that the Arizona courts have applied it. One is construction defects. The other is products liability. And all these other cases, Judge Martone in the KD and KD Enterprises and the Meischer v. Patchlink, you know, he was on the Supreme Court. He says it doesn't do it. He said the Supreme Court, you know, he was on the Supreme Court for some time. Whether they would take the case from you, I don't know. As far as we're concerned, Your Honor, and the delay you ask about that, it's better than getting tossed out of court and having nothing. Okay. Well, we've used up your time with your questions, but we'll give you a couple minutes for a moment. I appreciate that, Your Honor, and thank you very much. Your Honor, as it may have pleased the Court, I'm Charles Blanchard on behalf of GDC. I think it's important to put this in context. This is not a broad application of what the economic law school that we're asking for. It's actually fairly narrow and fairly specific. And I want to point just to a few factors. It was a commercial arrangement. We have a detailed 73-page negotiated agreement where both sides were represented by counsel on a forum contract. The dispute here is actually about a provision, Section 4.4 of the contract, that in detail talks about how GDC would be compensated if it did go forward with a construction contract. So it's an issue that was dealt with in the agreement. It's not just silent. The agreement actually gives a standard by which to judge whether GDC was paid or not paid. That is comparable sales. And also the fiduciary duty here and the contract claims are identical in terms of what they're focused on. And here the fiduciary duty claim actually depends on the language of the agreement. And finally, you have the backdrop of the Uniform Limited Partnership Act that can provide any missing details, although it's hard to mention what is missing from such a detailed agreement. But why, for example, I don't understand the argument for it. I appreciate that you're making a little narrower argument than for broad application of the economic law school. But let's take a churning case, for example. You have the same sort of factor. You have a detailed agreement between a broker and an investor. But the question is, how did the broker deal with that fiduciary relationship? Now, those loss-profit cases go forward. A case of attorney malpractice, defamation, tortious interference with contract, none of those require physical injury or property damage, and yet consequential damages are awarded. So in the case of breach of fiduciary duty, which is somewhat akin to the insurance bad faith cases that we see out of Arizona, why should it be any different? Why should that rule apply to preclude damages in a case that doesn't seem to fit, I guess? I think, Your Honor, the most important factor is what Judge Bolton points out in her decision, which I agree is actually a very good decision. I'll talk about it as well a little later. But what she points out is that there's no per se rule in Arizona. Instead, you look at it on a case-by-case basis, and you look at the policy kind of grounds to see whether this is the kind of an issue where it should be applied under the bargain made by the parties or by some outside duty such as fiduciary duty or fraud. And I think in the cases of professional liability, if you apply the economic loss rule, you would wipe out entire causes of action. You wouldn't wipe out all these torts I just mentioned. It wouldn't go forward. And so I think that's why instead of this sort of blanket rule, Arizona says, you need to know you can't just have a blanket rule. There's, you know, yes, fiduciary duty, and that wipes out the entire cause, or yes, there is. You have to look at the specifics of the case. For example, if this were a form broker-dealer contract that wasn't negotiated, that didn't really deal with the details of what's argued, I think the Arizona courts would probably say that's not enough to say that the contract should govern and that the only claims can be contract. But that's not this case. But I think the analogy may be in terms of the breach of fiduciary relationship. For example, if you've got an insurance bad faith case, even though I understand in this case you have a negotiated agreement, but insurance bad faith, legal malpractice perhaps, others, where you have a contract and yet the tort is fundamentally different because you have a breach of a relationship that's not completely governed by the contract because it's fiduciary. Now, here you have a contract, but general law says that there's a fiduciary relationship between the general and the limited. So I'm having trouble conceptually making a distinction. One distinction here is, you know, there's different types of fiduciary duty. There's some fiduciary duties that arise from the special relationship. That is not what we have here. Here we have fiduciary duty that's created itself by the contract. So I think in a uniform limited partnership act that specifically allows the parties to sort of vary the duties of the limited partner. So this is an area, unlike a lot of other areas of fiduciary duty, where you look a lot more than in other areas to the bargain made by the parties. And so I think that distinguishes that here. And then in Florida, which has for some reason more law on this than any other, you know, what they really focused in on is, is the fiduciary duty claim really dependent on the contract? Did it arise from a contractually created fiduciary duty? And was it addressed in the agreement? And although there was initially a lot of confusion in Florida, we cited in the letter some 2008 cases that make it very clear that as long as the fiduciary duty claim arises out of the contractual relationship, and it's dependent on the contractual relationship, it makes sense to apply the economic loss rule, because in that kind of relationship that is by its very nature in a contractual relationship, it should be governed by expectations and contract. If it's, you know, again, out in a claim that's independent of the contract or doesn't depend on the contract or is not addressed by the contract, the Florida courts say no. No courts are barred. Not fiduciary duty, not fraud, not negligent misrepresentation. And I would suggest that ---- Do the Arizona courts look to the Florida courts to ---- You know, Your Honor ---- to provide their decisions in this area? They did in one court of appeals decision, Kena v. Burger King, but that was depublished. But there's no ---- there's no Supreme Court decision in Florida that says ---- I mean, in Arizona that says we give special deference to the law of Florida. No. No, there isn't, Your Honor. It's just that Florida has a lot more developed law on this than any other city. I haven't seen such interest in Florida law since the 2000s. That's right. That's true, Your Honor. And I think ---- Hopefully we'll see it again. I think what's really instructive is to look at ---- But I gather your argument is that Florida has litigated the issue with such big ferocity, well, yeah, vigor that it provides a source of precedent for ---- And they sort of worked out the rough edges that would otherwise be created by a broader view of the economic loss rule. I think it's important. The Judge Bolton decision, I think, in Evans v. Singer, which really is a centerpiece in a reply brief, I think is worth talking about because I think it is actually, although it rejects the economic loss rule application in that case, does suggest a purview of how the Arizona courts would apply. And I point you to three parts of her decision. 518 FSUP 1143, she notes that failure to even consider the economic loss rule for an entire set of contracts or torts would be ---- depart substantially from the nuance, fact-specific approach taken in Salt River Project, which suggests that sort of a no fiduciary duty or no limited partnership contracts approach would be inconsistent with Arizona law. On that same page, although she criticizes this Court's language in the Avnet decision, she thinks it came to the right result. In that case, they found that economic loss rule barred negligent representation in a sales contract, which she said was the proper result. She just didn't like this Court's language. And finally, at 1143, she notes that even a contract for services, which is an issue in that case, would implicate an economic loss rule. And she gave the example of a contract for a musician, the detail, where the musician would be, what time they would do, how they would perform, and saying that that's the kind of detailed contract in which the economic loss rule would apply. And then she concluded by saying, opting for a case-by-case application of the economic loss rule, the Court can apply the policy considerations articulated by the Arizona courts themselves without arbitrarily expanding the rule. So I think here, again, it's not a form contract. It's not an issue where the fiduciary duty arose independent. This is a partnership act itself that allows the parties to vary the agreement, allows them to determine the details. It is a fiduciary duty that arises out of the contract. And in this case, the parties anticipated this very controversy. Its important backdrop is that there had been disputes between the parties and the partners up until this point, which is one reason why we have such a detailed agreement. And they specifically said in Section 4.4 that the issue of GDC acting as a general contractor and services as a general contractor would be outside the scope of this agreement, therefore not subject to fiduciary duty. They said that the compensation, that GDC would be the exclusive developer, so the decision was taken away from any discretion and said that GDC will be the developer of this project. Third of all, the contract says what the standard was by which GDC would be paid. And then it said that if GDC decided not to use subcontractors, it laid out in great detail how that payment would be made. So this is a case where the very issues that were now in dispute were anticipated by the parties, were bargained by the parties, and then that's the case where the expectations and contract policy should trump any sense of tort liability, which is why the economic loss rule should apply in this very narrow area. And applying Judge Bolton's analysis, which says you look at it on a case-by-case specific basis, and then you add to that what the Florida courts tell you, I think this is a very narrow application of the economic loss rule that doesn't require you to really make new law or anticipate much more than what the policy considerations that are in the Arizona courts. Let me just touch very briefly on our second argument, and that is that the agreement itself here in Section 4.4 itself does a carve-out where it attempts to say that GDC's role in developing this property should not be subject to the fiduciary duty. In response, in the reply, a Hall family partner says, no, all that was outside the scope was the actual service of building. The decision how much to pay will still be within the agreement. And I would submit that that is inconsistent with the language of 4.4. If all that 4.4 was intended to do in the agreement was carve out GDC's role as a contractor, it wouldn't really have been necessary, because Section 307 of the Uniform Limited Partnership Code already says that when you're acting as a vendor, you're not subject to the duties as a limited partner. And so I think the fact that 4.4 goes on to detail the compensation and how it's going to be calculated suggests that this is an area that was intended by the parties to be beyond the scope of fiduciary duty. So unless you have any questions ---- What's your view of the certification? Your Honor, this case has been going on almost as long as I've been a lawyer, over 21 years. And so I think the further delay, and I am now a special counsel for the debtor in bankruptcy court, and so my fees are to be paid for out of the debt of the bankruptcy court. So I think there are some strong reasons not to, in particular since I think this case, again, falls well within the mainstream. And also the fact is that although economic loss rule is applied quite a bit, this is like the second fiduciary duty case that I've seen in the last 10 years. So I don't think this is a case that really merits certification. Thank you. Any further questions? Thanks for your hard work. We'll give you two minutes for rebuttal. Thank you, Your Honor. Just following up on your last question to opposing counsel, there have been three law review articles in the last three or four years in Arizona on this fiduciary duty. There was a symposium hosted by Professor Dobbs relating indirectly to all of this concept, and that's all in our brief. The argument about paragraph 3, excuse me, 4.4 was what I mentioned before. That's the article Arizona 29307. Judge Rogers heard this in the Taylor hearing, which these people let go on, and then when they got an adverse ruling, they ran to the bankruptcy court and said it was void. But that's cited in the reply brief at page 16. He said their interpretation of 4.4 is so unreasonable, he just couldn't believe it. It was unbelievable. And I have the exact language on page 16. With regard to the list that you were running off with regard to, Judge Thomas, the issues where it has arisen, there are also, as I noted on page 306 in the record, other situations where the Arizona courts have not applied it. They've allowed insurance contracts, health insurance contracts, auto insurance disputes, and employment contracts. They've all allowed these tort damages to go forward. But the discussions in those cases, as I read them, don't discuss the economic loss rule. They just say what damages are available. I agree, Your Honor. And the economic loss rule is something that basically is being stirred up by a few people, even though it goes back to the 1973 opinion in Arizona. I do want to point out in closing, because I've run out of time, the Florida cases are very confusing. The law review article written by his partner said that they're just a morass. I believe that's quoted in my brief. And there is a difference in Florida between the state court opinions and the federal court opinions. The federal court opinions, upon which they rely, are much more aggressive, much different. And the last thing, this is the second time that they've done this to us. This is intentional misconduct. This is not an accident. They hid that construction contract until the second partnership agreement or the amended partnership agreement was signed, and then they did this contract with themselves. They were forewarned. They received that eight-page letter in advance of signing the contract saying, you're going to breach your fiduciary duties. Don't do this. Go out and do what you're supposed to do. Get kids, et cetera. They didn't do any of it. And their interpretation of the you look only at whether the contract claims and the fiduciary claims arise out of the same operative facts. That is not the law in Arizona. That's the law that they would like it to be. Unless you have questions, I'll stop there. Thank you, counsel. The case just heard will be submitted.
judges: Thomas, Paez, Ezra